Mr. Doug Jones Chairperson Statewide Human Rights Advocacy Committee 1317 Winewood Boulevard Building 1, Suite 401 Tallahassee, Florida 32399-0700
Dear Mr. Jones:
You ask the following question:
May the Statewide Human Rights Advocacy Committee or a district human rights advocacy committee access mental health treatment records of a patient of either a hospital or a designated Baker Act receiving facility when such records are requested in connection with the investigation of a complaint pertaining to a patient of the hospital or facility or in connection with the monitoring of such facilities?
In sum:
The Statewide Human Rights Advocacy Committee or a district human rights advocacy committee may access clinical and legal records for patients committed to a designated Baker Act receiving or treatment facility, but does not have access to such records of patients admitted to other hospitals or facilities.
You state that a district human rights advocacy committee was denied access to mental health treatment records of the patients in a hospital due to the hospital's uncertainty as to its duties regarding such records and the possible requirement of a court order or a release before such records could be disclosed to the committee. You do not indicate whether the hospital is a designated Baker Act receiving facility.
Pursuant to section 402.166(8)(a)1., Florida Statutes, a district human rights advocacy committee (DHRAC) shall have
"[a]ccess to all client records, files, and reports from any program, service, or facility that is operated, funded, licensed, or regulated by the Department of Children and Family Services and any records which are material to its investigation and which are in the custody of any other agency or department of government. . . ."[1]
A DHRAC also has standing to petition the circuit court for access to client records that by law are specified confidential.[2]
However, historically it has been the position of this office that access to client records, files, and reports by a human rights advocacy committee is limited to information that has been disclosed to the Department of Children and Family Services (DCF).[3]
Part I of Chapter 394, Florida Statutes, "The Florida Mental Health Act," or "The Baker Act (Act)," encompasses treatment programs to address mental, emotional, and behavioral disorders.[4] Section 394.453, Florida Statutes, directs the Department of Children and Family Services to "evaluate, research, plan, and recommend . . . programs designed to reduce the occurrence, severity, duration, and disabling aspects of mental, emotional, and behavioral disorders." The Legislature expresses its intent that patients be provided with emergency service and temporary detention for evaluation when required, and that patients be admitted to treatment facilities on a voluntary basis when extended or continuing care is needed and unavailable in the community. Involuntary placement may be provided only when expert evaluation determines that it is necessary, and such treatment or examination must be accomplished in a setting that is appropriate and most likely to facilitate the proper care and treatment to return the patient to the community as soon as possible. Moreover, the Legislature wished to ensure that individual dignity and human rights be guaranteed to all persons admitted to mental health facilities or being detained under section 394.463, Florida Statutes.[5]
The Department of Children and Family Services is designated as the "Mental Health Authority" of Florida.[6] As such, DCF is responsible for the planning, evaluation, and implementation of a complete and comprehensive statewide program of mental health including community services, receiving and treatment facilities, child services, research, and training, as authorized by the Legislature and based on the annual program budget of the department.[7] In order to carry out its responsibilities, DCF may contract to provide, and be provided with, services and facilities with, among others, public and private hospitals, receiving and treatment facilities, clinics, counties, and municipalities.[8]
During the 1996 legislative session, several amendments to the Act reflected a change in accessibility to patients and their records. Section 394.459(5)(c), Florida Statutes, was amended to specifically include human rights advocacy committees among those individuals and entities required to be given immediate access to any patient, subject to the patient's right to withdraw consent at any time.[9] Most directly affecting access to patients and their records by human rights advocacy committees, section 394.4595, Florida Statutes, was created to provide:
"Any facility designated by the department as a receiving or treatment facility must allow access to any patient and theclinical and legal records of any patient admitted pursuant to the provisions of this act by members of the Human Rights AdvocacyCommittee." (e.s.)
A "receiving facility" is "any public or private facility designated by the department to receive and hold involuntary patients under emergency conditions or for psychiatric evaluation and to provide short-term treatment."[10] A "treatment facility" is defined as
"any state-owned, state-operated, or state-supported hospital, center, or clinic designated by the department for extended treatment and hospitalization, beyond that provided for by a receiving facility, of persons who have a mental illness, including facilities of the United States Government, and any private facility designated by the department when rendering such services to a person pursuant to the provisions of this part."[11]
For purposes of the Act, a "clinical record" means "all parts of the record required to be maintained and includes all medical records, progress notes, charts, and admission and discharge data, and all other information recorded by a facility which pertains to the patient's hospitalization and treatment."[12]
Thus, the plain language of section 394.4595, Florida Statutes, authorizes a human rights advocacy committee to have access to any patient and the clinical and legal records of such patient when the patient has been admitted to a facility designated by DCF as a treatment or receiving facility.[13] While the language requires no review of legislative history to decipher its intent, the analysis accompanying passage of the legislation states that section 394.4595, Florida Statutes, was created to "require that receiving and treatment facilities allow access to patients and patient records by members of the Human Rights Advocacy Committee."[14]
Accordingly, it would appear that human rights advocacy committees may access mental health treatment records for patients committed to a designated Baker Act receiving or treatment facility, but may not access such records of patients admitted to other hospitals or facilities.
Sincerely,
Robert A. Butterworth Attorney General
RAB/tls
[1] Section 402.165(8)(a)2., Fla. Stat., grants substantially the same authority to access client information to the Statewide Human Rights Advocacy Committee.
[2] Section 402.166(8)(a)2., Fla. Stat. See also, s.402.165(8)(a)3., Fla. Stat., conveying the same standing upon the Statewide Human Rights Advocacy Committee.
[3] See, Op. Att'y Gen. Fla. 98-10 (1998) (committee may have access to client files, records, and reports of a domestic violence center disclosed to the DCF, but may not conduct unannounced site visits of such centers absent a specific complaint); 96-60 (1960) (committee has no access to client files, records, and reports of child protection teams until the information has been disclosed to DCF).
[4] Section 394.453, Fla. Stat.
[5] Id.
[6] Section 394.457(1), Fla. Stat.
[7] Section 394.457(2)(a), Fla. Stat.
[8] Section 394.457(3), Fla. Stat.
[9] Cf., s. 394.459(12), Fla. Stat., requiring a receiving or treatment facility to post a notice of the patient's rights and to specifically include the telephone numbers of the local human rights advocacy committee and Advocacy Center for Persons with Disabilities, Inc.
[10] Section 394.455(26), Fla. Stat.
[11] Section 394.455(30), Fla. Stat.
[12] Section 394.455(3), Fla. Stat.
[13] See, State v. Dugan, 685 So.2d 1210 (Fla. 1996) (when language of statute is clear and unambiguous, court must derive legislative intent from words used without involving rules of construction).
[14] Final Bill Analysis Economic Impact Statement, Committee on Aging and Human Services, House of Representatives, House Bill 903, May 31, 1996.